IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AVERY L. CLEVELAND, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | C.A. No._____ |
|       v. | § | |
| | § | |
| TRELLEBORG OFFSHORE | § | |
|  US, INC. | § | |
| | § | |
|   Defendant. | § | (JURY TRIAL DEMANDED) |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, AVERY L. CLEVELAND, filing his Original Complaint complaining of Defendant, Trelleborg Offshore US, Inc. (hereinafter "TOUS"), and in support thereof would show as follows:

### I.
### JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Title I of the Americans With Disabilities Act of 1990 ("ADA"), and the Family and Medical Leave Act ("FMLA").

2. Plaintiff resides in Cypress, Texas. Plaintiff is African-American and is protected by 42 U.S.C. §1981 and Title VII. Plaintiff: (1) is a qualified individual with a physical impairment (migrane headaches) that limits him in one or more major life activities including but

not limited to his ability to think, concentrate, and see, among other things; (2) has a history and record of having a disability; and (3) has been regarded as having a disability.  Consequently, he is disabled within the meaning of the ADA.   Plaintiff is also protected by FMLA.

3. Moreover, Plaintiff was at all relevant times an employee within the meaning of these applicable statutes.

4. Defendant, Trelleborg Offshore US, Inc. ("TOUS"), operates in Texas.  Defendant was at all times Plaintiff's employer within the meaning of these applicable statutes.

5. Defendant engaged in an industry affecting commerce and employed approximately 300 regular employees.

6. The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

**VICARIOUS LIABILITY--RESPONDEAT SUPERIOR**

7. Whenever in this complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's supervisors, agents, servants, employees, or representatives.

8. The acts of management including but not limited to Operations Manager Art Torrey ("Torrey"), Production Manager Henry Brown ("Brown") and Human Resources Ginger Guyton ("Guyton") were performed while in the employment of Defendant, to further Defendant's business, to accomplish the objective for which these supervisory employees were hired, and within the course and scope of that employment or within the authority delegated to these employees.

These managers (one or more) were given supervisory authority over Plaintiff.  As such, they controlled the day-to-day work conditions, duties, and all other aspects of Plaintiff's employment.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about October 30, 2012.  In that Charge, No. 460-2013-00343, and any amendments and/or attachments thereto, Plaintiff asserted that Defendant discriminated against him because of his race and disability.

10. After investigating Plaintiff's Charge, the EEOC issued Plaintiff a Right to Sue Letter.  Plaintiff has exhausted his administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

11. In or about October of 2006, Cleveland began working at TOUS as an operator on a temporary basis.

12. In or about January of 2007, Cleveland was hired on as a permanent employee working as a Level 1 Operator.

13. In or about September of 2007, Cleveland was promoted to Production Supervisor.

14. In or about July of 2011, Cleveland was promoted to Engineering Specialist on the Process Engineering Team.

15. In or about December of 2011, Cleveland was transferred to a Production Supervisor's position on the day shift.

-4-

16. In or about June of 2012, Keith Vital resigned his position as Production Supervisor on nights.

17. In June of 2012, Keith Vital (African-American) was a Production Supervisor.

18. In June of 2012, Avery Cleveland (African-American) was a Production Supervisor.

19. In June of 2012, Angel Ramos (Hispanic) was a Production Supervisor.

20. In June of 2012, Greg Craig (Caucasian) was a Production Supervisor.

21. In June of 2012, Keith Vital had the best production numbers out of the four -- Keith Vital, Avery Cleveland, Angel Ramos and Greg Craig.

22. In June of 2012, Avery Cleveland had the second best production numbers out of the four -- Keith Vital, Avery Cleveland, Angel Ramos and Greg Craig.

23. In June of 2012, Angel Ramos had the third best production numbers out of the four -- Keith Vital, Avery Cleveland, Angel Ramos and Greg Craig.

24. In June of 2012, Greg Craig had the lowest production numbers out of the four -- Keith Vital, Avery Cleveland, Angel Ramos and Greg Craig.

25. In June of 2012, Torrey and Brown met and told Cleveland that he was going to be moved to the Production Supervisor position on nights because his production numbers were low.

26. Cleveland excused himself from said meeting, retrieved the production reports, returned, and showed Torrey and Brown that his production numbers were better than Ramos and Craig.

27. Torrey and Brown then added the transfer to the night shift was going to happen as it was the "nature of the business."

28. In July of 2012, Cleveland received praise for reducing the cost of TOUS' bead inventory.

29. In August of 2012, Cleveland's work schedule was as follows: Sundays through Tuesdays from 6:00 p.m. to 6:00 a.m. and Wednesdays from 6 p.m. to midnight. Cleveland's off days were Thursdays, Fridays and Saturdays.

30. On or about August 26, 2012, Cleveland was leaving work. He remembered putting his vehicle into reverse and then losing consciousness. He was rushed to the hospital via ambulance.

31. On or about August 27, 2012, Cleveland took a medical leave of absence pursuant to the Family and Medical Leave Act ("FMLA").

32. On or about October 8, 2012, Cleveland returned to work from leave per the FMLA.

33. Upon return to work, Cleveland was treated with great disdain and difficulty by persons in management.

34. On or about October 9, 2012 (Tuesday), Cleveland worked the day shift.

35. On or about October 10, 2012 (Wednesday), Cleveland worked the day shift.

36. On or about October 11, 2012 (Thursday), Cleveland was not scheduled to work.

37. On or about October 12, 2012 (Friday), Cleveland was not scheduled to work.

38. On or about October 13, 2012 (Saturday), Cleveland was not scheduled to work.

39. On or about October 14, 2012 (Sunday), Cleveland's doctor took him off of work again pursuant to FMLA.

40. On or about October 14, 2012 (Sunday), TOUS began investigating claims against Cleveland.

41. On or about October 18, 2012 (Thursday), Cleveland's second FMLA leave ended.

42. On or about October 19, 2012 (Friday), Cleveland was not scheduled to work.

43. On or about October 20, 2012 (Saturday), Cleveland was not scheduled to work.

44. On or about October 21, 2012 (Sunday), Cleveland returned to work but was sent home because, according to TOUS, he allegedly had not completed the Work Status Report form properly.

45. On or about October 22, 2012 (Monday), Cleveland returned to work with a new Work Report form but was sent home because, according to TOUS, Guyton was not available to approve it.

46. Cleveland was next sent home because, according to TOUS, he was under investigation for allegedly showing favoritism to Lorena Campos that included excusing the employee's leaving work early.

47. On October 25, 2012, Cleveland was terminated.

48. Cleveland had no written disciplinary actions before his termination.

49. Cleveland had no oral disciplinary actions before his termination.

50. No other manager was disciplined –orally or in writing—for showing favoritism to Lorena Campos.

51. Upon information and belief and during Cleveland's employment, no other manager was disciplined –orally or in writing—for showing favoritism.

52. Cleveland did not supervise Lorena Campos until after Keith Vital resigned.

53. The effect of the practices complained of herein has been to deprive Cleveland of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, disability and FMLA needs.

## IV.
## CAUSES OF ACTION

**FAMILY AND MEDICAL LEAVE ACT**

54. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

55. Plaintiff was qualified for, requested, and received leave pursuant to the Family and Medical Leave Act ("FMLA") from Defendant. Defendant violated Plaintiff's rights under the FMLA by interfering with, discouraging, and/or restraining the exercise of or the attempt to exercise his rights under the FMLA and by retaliating against Cleveland following a medical leave of absence under the FMLA including but not limited to: being openly hostile towards Cleveland after his return to work from his leaves, deviating from normal medical leave reporting processes, snatching documents out of his hands, and terminating him soon after he returned from his medical leaves.

56. Plaintiff seeks all rights and remedies available to him including but not limited to reinstatement, actual and compensatory damages, and exemplary damages.

**DISABILITY DISCRIMINATION**

57.     Plaintiff repeat and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

58.     Plaintiff is a qualified individual with a permanent, long-standing physical impairment in that he suffers from severe migrane headaches that limits him in one or more major life activities including but not limited to his ability to think, concentrate, and see, among other things.

59.     Plaintiff has a history and record of having said disability that severely compromised Plaintiff in the ways cited above.  His record of said disability takes the form of hospital records, medical records and personnel records that indicates the plaintiff once had a substantially limiting impairment.  Here, Plaintiff was in and out of doctor's care surrounding the migrane headaches that he endured. As well, Plaintiff was placed on medical leave for such medical condition by Defendant employer, for which his supervisors were aware.

60.     Plaintiff has been regarded as having a disability.  Consequently, he is disabled within the meaning of the ADA.   Defendant employer entertained some misperceptions regarding Plaintiff that proved detrimental to his employment – namely that his impairment was problematic, permanent, and substantially limiting.

61.     Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of the ADA, by intentionally interfering with Plaintiff's performance of his employment because of his actual medical condition, history and record of disability and the perception of same including being openly hostile towards Cleveland after his return to work from his medical leaves, deviating from normal medical leave reporting processes, snatching

documents out of his hands, and terminating him soon after he returned from his medical leaves, among other things.

62. This intentional interference consisted of discrimination of a continuous nature.

63. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

64. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

**RACE DISCRIMINATION**

65. Cleveland repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

66. Defendant, through its agents, supervisors, or employees violated Cleveland's civil rights in violation of 42 U.S.C. §1981 and Title VII, by intentionally interfering with Cleveland's performance of his employment because of his race.

67. This intentional interference consisted of discrimination of a continuous nature.

68. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Cleveland's employment.

69. The above-described acts on Defendant part caused Plaintiff substantial injury and damage.

## V.
## JURY DEMAND

70. Cleveland requests that this action be heard before a jury.

## VI.
## DAMAGES

71. TOUS' conduct constitutes violations of statutory law. Such unlawful conduct seriously affects Cleveland in his occupation, trade and business. Because of TOUS' unlawful conduct, Cleveland has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Cleveland has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of TOUS. Accordingly, Cleveland seeks all general, special, incidental, consequential, economic, compensatory, and punitive damages in an amount to be proved at trial.

72. Because of TOUS' unlawful and tortious conduct, it has been necessary for Cleveland to retain the undersigned attorney to represent him in these causes of action Plaintiff has agreed to pay his attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

73. Additionally, Cleveland has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living.

74. Further, Cleveland seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to TOUS. Cleveland also seeks post-judgment interest at the maximum rate allowed by law in the event that TOUS does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Cleveland have judgment against Defendant TOUS for:

a. Permanent injunction enjoining Defendant TOUS, its agents, successors, employees, and those acting in consort with Defendant TOUS from engaging in any employment practice which discriminates on the basis of FMLA needs, disability and race discrimination.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

>Respectfully submitted,
>
>Law Offices of Katrina Patrick
>
>*/s/ Katrina Patrick*
>Katrina Patrick
>Attorney-in-Charge
>State Bar No. 00797218
>Federal Bar No. 22038
>530 Lovett Street
>Houston, Texas  77006
>Telephone:  (713) 796-8218
>Facsimile:  (713) 533-9607
>
>**ATTORNEY FOR PLAINTIFF**
>**AVERY CLEVELAND**